Good morning all, our first case this morning is the United States v. Brasher, Mr. Gordon. My name is Jeremy Gordon and I represent the appellant in this case, Mr. Terrence Brasher. Mr. Brasher was charged with and convicted on a superseding indictment of conspiracy to distribute controlled substances, specifically 500 grams or more of methamphetamine, 1 kilogram or more of heroin, and 5 kilograms or more of cocaine. Mr. Brasher went to trial, Mr. Brasher was convicted at trial, and at sentencing the court found that the two A51 enhancements were found to be true, and they gave Mr. Brasher a statutory minimum of life. His guideline range was also deemed to be level 43 and a criminal history category 6 for a guideline range of life, the court sentenced him to life in prison. Your Honor, we made several grounds for appeal in this matter. The first ground of appeal that we've indicated is that there was not enough evidence in order to support a conviction for count one of a superseding indictment. The reason for this is because there was evidence of multiple conspiracies that were presented and that there was insufficient evidence to prove the conspiracy for drugs in the Southern District of Indiana. Now the agreement, the indictment in this case, lists several acts between Brasher and the individual named Shelton, but the overwhelming majority of the acts and the manner and means of the conspiracy all happened in the state of Kentucky, and the evidence that's covered Mr. Good morning, Mr. Gordon, this is Judge Rosner. What about Mr. Brasher's several purchases of cocaine to supply Mr. Shelton, plus his participation in the murder of another dealer? Don't those actions amount to acts in furtherance of a conspiracy beyond his own individual dealing? I mean, they certainly would reflect his awareness of other spokes in the conspiracy. I would say that those things do provide some evidence, that they provide a tad bit of evidence, but the overwhelming majority of what happened in this case happened in Kentucky. When the witnesses came and they spoke, they spoke about Kentucky. When the witnesses came and talked to the court, they talked about Kentucky. It is regrettable that there was evidence of a murder that happened, and it's regrettable that there was information about Mr. Brasher driving to, or having other individuals drive to Texas and bring drugs from Texas to where they were. But the overwhelming majority of the information comes from Kentucky. How are you? So, there was information that showed that there might have been a conspiracy that might have been from Kentucky, and there was information that showed that the information that the government presented in trial did not indicate that Brasher was, it was not sufficient to indicate that Brasher was part of a conspiracy in the Southern District of Indiana, but rather that there might have been a conspiracy that he was involved in in the Louisville, Kentucky area. The evidence showed that Shelton was a supplier to Brasher, and that Brasher would take what he got from Shelton and then possibly distribute it to people in Kentucky. Then Shelton would also distribute drugs to other individuals that would distribute that to the Southern District of Indiana, but there was not enough information and not enough evidence to show that Brasher was involved in that Southern District of Indiana conspiracy. Now, the government's indicated that there is a hub-and-spoke conspiracy here, but in order for there to be a hub-and-spoke conspiracy, there has to be a ramp, and we know that the people that form the spokes have to know of each other, and they have to do something in furtherance of the greater illegal enterprise. In this case, it was referred to by the government, I believe, as the Shelton Drug Enterprise, and the information that the government provided in this case through the trial was not enough to indicate that there was a hub-and-spoke conspiracy that pertained to Mr. Brasher. Now, in Townsend, which is the case that we had talked about in our brief, the court looked at the relationship between Diaz, a drug supplier, and Marquez, a drug seller. Now, Marquez knew about the other people that Diaz was working with and sold to, but he didn't have a stake in any of those dealings. Those dealings didn't help him out, they didn't make his case better, they didn't make his drug situation worse, and the court found that there was not enough knowledge in that with those other people. Mr. Gordon, I appreciate the argument you're making there. I think your briefing is very good and very clear on that. Could I, mindful of the time that you have, could I take you to one of the other arguments you advanced in your brief, would you mind? And that's the Batson issue. And the point that I understand you're making there is that the trial record here simply contains no finding by the district court in response to the strike of the one female African-American jury, juror. And the point, or prospective juror, and I think the point that you're making, and correct me if I'm wrong, is that under the Batson framework, the record, especially in light of our decision in Taylor 2, has to contain that finding. Have I understood your argument correctly? Yes, Your Honor. Our argument there is that under Batson, there is to be a three-step process. First off, the party that is aggrieved indicates who the juror was that was struck and that they were struck improperly. Then the other party provides a race-neutral reason why that person was struck. And then if there's any further argument about it from the aggrieved party, then they're able to make their objection, such as not striking a similar person of a different race that had the same circumstances. And then the court is supposed to make a finding after all that. And that's your point, right? That the trial record here, not the appellate briefs, there's a race-neutral explanation that's proffered in the appellate briefs. But your point is that never occurred at the trial level. Yes, Your Honor. That is correct. That did not happen at the trial level. There is supposed to be a time when the attorney that struck the individual gives a race-neutral reason, and then for the court to make a decision based on that race-neutral reason. That did not happen here. It is not enough for the striking party to come up with a reason after the fact in appellate briefs one or more years later. You know, as I understand it, Judge Pratt presided over the voir dire, conducted most of the questioning, and overruled the defense's motion, of course, to disqualify Mr. M for cause. Even if the government did not argue below that Mr. M was different from other jurors with respect to family drug convictions, wasn't Judge Pratt necessarily aware of the difference? I believe that Judge Pratt was aware of the difference. But what Batson says, and the constitutional, and the importance of Batson, and the importance of a person to receive a jury of their peers and be free from strikes that are based on race or that could be based on race, the purpose of all that is that you go on the record. The purpose of it is that one party gives their reason, then the other party gives their race-neutral reason, and then ultimately the judge decides. So it's our position that what the court is ultimately supposed to do is offer an ultimate and final ruling. Even if other things happen, the court is supposed to make an ultimate and final ruling based on Batson, especially in a place like the Southern District of Indiana, where the court indicated in their sidebar comments that there was a low amount of African-Americans that were on the juries, that there were a low amount of people that were—a low amount of African-Americans in that place, in that division, and then there were a low amount of people that were on the juries. So to me, it's our argument that that makes it even more important. Are there any more questions on the Batson issue? Anything else that I can answer for the court on the Batson issue? All right. I have been wondering about the Section 851 notice, you know, and the existence of that 2000 conviction, because what real doubt is there as to the 2000 conviction? You know, the existence of that conviction seems—it actually seems to have been admitted in the pressure sentencing memorandum. Well, I believe that there were things that were said in the sentencing memorandum that unfortunately are regrettable, but I believe that it's ultimately a matter of—when you look at the statute itself, the statute of 851 itself, the statute indicates that the person gets a chance to say, it was me or it wasn't me. When you look at the actual statute of 851, and I believe that in this situation, that did not happen properly as the judge did not give him a chance to fight those convictions. And then in order to—it does not—my argument is that it's not—if a person is going—Mr. Brasher had—the evidence showed that Mr. Brasher had two convictions, two drug convictions, and those two drug convictions would end up, as they did in this case, with a mandatory minimum of statutory life that the judge could not do anything about. So in a situation like that, it makes it even more important that all the proper procedures be involved and all the proper procedures be undertaken, because as the judge indicated at the end of the sentencing, the judge did not want to give Mr. Brasher that mandatory life, but the judge had no other option, which makes it all the more important. The challenge, though, I think that Judge Robner is pointing out that your client created for you is he filed a document, right, in the district court, document 836, that in no uncertain terms admits the 2000 felony conviction. Right. There's no doubt that's what he's talking about. He actually references the Jefferson Circuit Court case, what it was captioned, what its case number was, all of that, and refers to it as a conviction. And then on top of that, if memory serves, the government came in with a certificate of conviction, right, not some kind of flimsy proof or anything. A certificate of conviction is a pretty significant document, and it aligns entirely with what's in the defendant's own filing. So I don't know if he waived it or not, but I just don't understand how there could possibly be any merit to a challenge to the 2000 conviction in light of what's in the record here. Well, the things that were filed in the district court are credible, but that is why in our we're asking for is that this case be sent back to the district court so that they can review the other charge that was part of the 851 conviction, that being, I believe, the 2013 cases. There were three cases there, and all three of those cases were found guilty on the same day, and there was not enough of an analysis as to whether or not those were separate and distinct incidents. The 2000 conviction and what happened that caused that to be found to be true is credible, but when you get to the automatic life would not apply to him if we were able to, if the case was sent back, and it might not apply to him if more analysis and more review was applied to the 2013 convictions. I have about 48 seconds left. Are there any other questions that I have before rebuttal? Apparently not. Thank you, Mr. Klein. Then I will reserve the rest of my time for rebuttal. Thank you, judges. Okay. Mr. Reitz. May it please the Court. Brian Reitz for the United States. I hope to address all three issues raised here by Mr. Brasher, but I want to jump in on the Batson claim and answer Judge Gutter's questions. I think I'd like to make at least three points. First of all, the district court did make a finding that there was a race-neutral reason as to both the strict and jurors. I would cite the court to document 828, page 12 and 13. Judge Pratt said that the prior drug offenses, be it of the juror or the juror's relative, was a race-neutral reason, and that's supported by this court's precedence. Point two, the government did offer a contemporaneous race-neutral reason for the strikes of those two jurors. I'd point the court to transcript pages 21 through 24. The government has never changed its reasoning for the strikes, both at the district court level and on appeal. Our reason for the strike is prior drug offenses of those prospective jurors. But how do you respond to Mr. Brasher's point that your argument as to Mr. M and what distinguished him from the other strict and jurors was not made below? Yes, Your Honor, so that was going to be my third point. First of all, legally, the government is required to explain its reasons for strikes. Nothing requires the government to explain its reasons for non-strikes. Now, admittedly, and we agree, this is what I said in a brief, it's ideal practice to explain the non-strike reasons to preliminary rebut this type of argument, but that is not a legal requirement the same way that explaining a strike is a legal requirement. Second, I think as Your Honor pointed out, Judge Pratt had the evidence, and the evidence is clear from the record. The reason Mr. M was not stricken is because his answers to Mr. Brasher's questioning, I would point out not the government's questioning, from Mr. Brasher's questioning, is that he had an antipathy to drugs, to drug dealers. He disowned his brother. He was afraid of reprisals to himself and his parents after his brother's drug offense. Can I pause you right there, Mr. Reitz? Yes, Your Honor. Now, that is clear as a bell to me from the appellate briefing, okay? There's no question about it, and in fact, perhaps, as you suggest, that's what the district court would rely upon as a race-neutral explanation, but I can't find anywhere in the trial transcript where that explanation was offered, okay? Is that, have I read the record correctly? That is correct, Your Honor. Okay, okay. And that's not of legal consequence in your view? So, I think it has some relevance, but I don't, I wouldn't say legal consequence and dispositive as to this claim. Batson gets at whether the reasons for the strikes were discriminatory or not. The reasons, looking at whether that reason was equally applied to strikes and non-strikes is a factor that can be weighed to consider whether the strikes were discriminatory, but it's not in and of itself dispositive for a couple reasons. First, again, the government is required to explain its strikes. It's not required to explain its non-strikes. It is better if we admit, preferably we would explain everything that occurred, but we are required to explain our strikes, and Mr. Brasher has not. No, I understand that, but it definitely becomes comparative, right, when a defendant is arguing that the reason for one strike is pretextual. It just inherently, I mean, you've done this enough to know that. It becomes a comparative analysis. Certainly. I guess the first thing I would have, I would like to make two points of that. First, I think the problem with that is Mr. Brasher, I don't think, is hardly even raising a pretextual claim. I think that's what he's getting at, but the government used this reasoning to strike two white jurors, or prospective jurors, and two black prospective jurors. So the government broadly applied it equally. Perhaps the lack of an explanation for the non-stricken juror might have more weight if the government had used this rationale to strike two African-American veneer and then struck no white veneer and kept the one white. Then maybe you're getting closer, though I still don't think there's a legal requirement. All that, I do want to step back, and if we could think about this as a ledger. What's on the side of discriminatory, non-discriminatory. So non-discriminatory, the government offered a, I think, clearly valid race-neutral reason. I understand there's a question about pretext, but everyone agrees that in a drug case, striking someone with a prior drug offense is going to be generally a race-neutral reason. That's one. Two, the government applied that to both black and white veneer people. Three, the government did not use all of its peremptory strikes. Four, the government did not strike one African-American veneer person. Five, one African-American veneer person made it onto the jury. On the other side of the ledger, I think we have nothing but the government could have explained one factor better. And I don't think that gets Mr. Brasher to a valid Batson claim. I don't think that's sufficient to show that the district court clearly erred when it found that the strikes, the two strikes the government made were non-discriminatory. And again, I do want to put all that said. Preferably, the government would explain the non-strike, but it's not a legal requirement and it is not sufficient, at least in this case, to show purposeful discrimination as to the two strikes the government did make. With that, if there are no further Batson questions, I would just like to move on quickly to 851. Judge Robner, I think you hit the nail on the head. Mr. Brasher effectively, or not effectively, he did admit to the convictions we're talking about in his sentencing memorandums. If that's not enough, surely the certified convictions showing matching name, date of birth, Social Security number, and the city where Mr. Brasher lived is enough to rebut any potential question of prejudice as to the 851s. I think we're left at this point and we have no argument bar wild speculation that Mr. Brasher didn't commit those crimes and this court has said that's simply insufficient. So, there's no prejudice as to the 851s. If there are no questions there, I would like to move on to the sufficiency. I think there's two broad points here. First, why Mr. Brasher was a hub and spoke and a rim connected to the spokes. And then two, why being hailed into court in Indiana was reasonably foreseeable. So, first of all, on the hub and spoke, Mr. Brasher has admitted that he was in a conspiracy with Shelton. So, the only question is whether he connects to other spokes. This court requires two things. Mr. Brasher have knowledge of other spokes and take some act in furtherance of the broader conspiracy. He discussed the other spokes with Shelton. He obtained drugs, as Judge Rovner pointed out, for the conspiracy at large, which is essentially the paradigmatic example of working for the conspiracy at large. I think that falls easily, neatly within what a hub and spoke conspiracy is. That leaves point two, whether Indiana was reasonably foreseeable to Mr. Brasher. It is for a number of reasons. First, we start with Mr. Brasher had actual knowledge that this was an interstate conspiracy. He obtained drugs from out of state. So, this is not a case where the defendant can say he was blindsided. He confined all of his dealing to one specific location. He, in fact, did not. That leaves Indiana. Mr. Brasher entered a drug conspiracy with an Indiana resident, Mr. Martin. He obtained drugs that were processed by Mr. Ortiz in Indiana. During the course of the conspiracy, he traveled to Indiana, possibly not for drugs, but he still traveled to the district at that point in time. Underlaying or overarching all of this is the proximity. Mr. Brasher entered a drug conspiracy in the local metropolitan area that extends into the southern district of Indiana. There's no reason this court needs to deal with the outer barriers of proximity and what's reasonably foreseeable. But, if one enters into a large-scale drug conspiracy in a metropolitan area, surely it's reasonably foreseeable that that drug conspiracy will extend to the whole metropolitan area. If there are no further questions, the government will be happy to rest on its brief and ask that this court confirm this report. Thank you. Thank you. Mr. Gordon. All right. So, the first thing that I want to address, judges, is the statements about the Batson claim itself. What I heard from the government was that the government has to go over their strikes, but they don't have to go over the non-strikes. And I respectfully disagree. It's our position that when there's a question about if race was used and if there's a similar person of a different race that did not get the same treatment as a person who was struck, then I do believe that in that situation, the government has a duty to explain their and why. Mr. Gordon, is that because they failed to address Juror M? Is that the juror that you would have felt that they needed to explain? Yes, Your Honor. I believe so. Well, Juror M was struck by the defense, though, right? Well, the juror that I'm referring to is the juror that was—the explanation that they gave with regards to the person who was not struck because they had a brother. Right. A brother that they disowned. So— That's the juror that you would like the government to be held accountable for not explaining why they didn't strike that juror, right? Yes, Your Honor. But the defense, after cross-examining that juror or examining that juror, struck that defendant, didn't they? Right, but— I mean, they didn't make it to the jury. I understand your point about what the government should have done. Mr. Reitz acknowledges that. But the very—the comparator that you're focusing on was actually struck by the defense, right? That's correct, Your Honor. That's correct, Your Honor. Okay. There was—one thing that I noted in the government's brief was that—was that—that there's a—that there's a hurried back and forth when it goes—when we were talking about Beth, about you go—because you go to the side and you talk to the judge about it, and both parties are in front of the judge at a sidebar conference. But—but when you're in a—when you're dealing with a constitutional guarantee, it's our position that—that the government who—the government—the same government who is trying to put a person in prison and take away their freedom in this situation for life, that the government should be held to—to a standard with regards to that and make sure that they—that they do everything that is—that is correct and proper. Now, going to the—going to the—to the conspiracy issue, just briefly, there is—this argument—the hub and spoke argument fails on the spokes because the spokes have to know about each other, and there's very little information that said—said that the spokes knew about each other. It is—it's true that there is information in the record that Brasher and Shelton talked about—talked about the spokes, but that was only between Brasher and Shelton. That was not with regards to the—to the greater conspiracy and all of the spokes themselves. And if you—without that—without the hub and spoke argument, you have—you have Brasher, you have Shelton, and you have the Western District of Kentucky. You don't have—you don't—there's—there's—the information indicated that—that Brasher's shop was in Kentucky, Shelton's shop was in Kentucky, Martin's shop was in Kentucky, Ortiz's shop, the person who was the alleged cook, that that shop was also in Kentucky when there were—when some of the large portion of the agreements and the deals that were made happened in the state of Kentucky. And so then, that's where—that's why we're explaining that there was not enough in order to charge Brasher in the Southern District of Indiana. If there—if I can answer any questions. I think so. All right. Thank you, judges. Thank you, Mr. Gordon. That's all right. The case is taken under advisement.